J-S13020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                            :             PENNSYLVANIA
                                            :

               v.                                :
                                            :

ALAN TROY HOUSER                   :
                                            :

           Appellant              :    No. 987 WDA 2023

Appeal from the PCRA Order Entered August 7, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003802-2013

BEFORE:  KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:            **FILED: AUGUST 5, 2024**

Alan Troy Houser ("Houser") appeals pro se from the order entered by the Westmoreland County Court of Common Pleas dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA").[1]  On appeal, Houser raises several claims asserting the ineffectiveness of his trial counsel and a claim of prosecutorial misconduct.  Because we conclude that his claims either lack merit or are waived, we affirm.

This appeal arises out of a series of acts of domestic violence by Houser against his paramour, Gina Richter ("Richter"), from which she sustained

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541-9546.

several serious injuries. The charges that led to Houser's conviction in this case occurred on September 6, 2013.

> On that date, [Houser] and [Richter] were at her home[.] The couple began to fight and [Richter] fled into the backyard. Police were called at 5:45 a.m. [Patrolman] Dion Wagner observed [Houser] standing on top of [Richter] with his knee on her chest. He observed [two to three] punches and yelled for the actor to stop. In response, [Houser] fled and eventually was found hiding next to a tree. Although ordered to get on the ground, [Houser] refused and had to be tased twice in order to be subdued. Officer Christian Baker testified that he tased [Houser] and yet he and five other officers were unable to handcuff him. After being tased a second time, [Houser] was subdued.

> [Richter] was hospitalized for three weeks with five broken bones in her face. She lost some of her hearing and currently suffers from post[-]traumatic stress disorder (PTSD). She since has had to be hospitalized for extreme anxiety. Dr. Duane Spiker, her psychiatrist, testified to her PTSD and depression, which were caused by the September 6, 2013, incident, and have resulted in her continuing treatment.

Trial Court Opinion, 11/3/2015, at 3 (record citations omitted).

On February 5, 2015, a jury found Houser guilty of aggravated assault and resisting arrest. On May 1, 2015, the trial court sentenced Houser to ten to twenty years in prison for aggravated assault, and a consecutive term of one to two years in prison for resisting arrest. This Court affirmed his judgment of sentence on December 15, 2016. ***See generally Commonwealth v. Houser***, 856 WDA 2015 (Pa. Super. Dec. 15, 2016) (non-precedential decision). Houser did not file a petition for allowance of appeal to our Supreme Court.

- 2 -

On April 12, 2017, Houser filed a timely pro se PCRA petition, his first, and the PCRA court appointed counsel. On September 13, 2018, PCRA counsel filed a no-merit letter and petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). On October 10, 2018, the PCRA court issued notice of its intent to dismiss Houser's PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907. Houser filed a pro se response on November 5, 2018. For reasons that are unclear from the record, the PCRA court scheduled an evidentiary hearing for February 20, 2019, during which the court permitted PCRA counsel to withdraw, but continued the evidentiary portion of the hearing for ninety days to allow Houser to prepare and present his case pro se.

Over the next several years, Houser's PCRA petition encountered a variety of different delays. Several of these delays were the result of continuances that Houser requested. The case was then further delayed by the recusal of the original PCRA court judge. After Houser's case was assigned to a new PCRA court judge, the PCRA court held an evidentiary hearing on August 30, 2022, at which Houser represented himself. On June 22, 2023, the PCRA court once again issued notice of its intent to dismiss Houser's PCRA petition pursuant to Rule 907 and formally dismissed the petition on August 7, 2023. Houser timely appealed to this Court. Both the PCRA court and Houser have complied with Pennsylvania Rule of Appellate Procedure 1925.

On December 1, 2023, this Court issued an order remanding this case to the PCRA court directing the court to determine whether Houser was entitled to the appointment of counsel at the August 30, 2022 hearing. **See** Order, 12/1/2023. PCRA petitioners have a rule-based right to the assistance of counsel to litigate their first PCRA petition. **See** Pa.R.Crim.P. 904(C) ("[W]hen an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief."). In **Commonwealth v. Kenney**, 732 A.2d 1161 (Pa. 1999), our Supreme Court explained that where indigent petitioners' right to appointment of counsel in pursuing their first PCRA petition has been effectively denied by action of court or counsel, the petitioner is entitled to remand for appointment of counsel to litigate their PCRA petition to give the petitioner the benefit of competent counsel at each stage of the post-conviction review. **Id.** at 1164. In **Commonwealth v. Stossel**, 17 A.3d 1286 (Pa. Super. 2011), this Court, upon consideration of the rule-based right to appointed counsel set forth in Rule 904(C), held "that where an indigent, first-time PCRA petitioner was denied his right to counsel—or failed to properly waive that right—this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake." **Id**. at 1290.

In a January 11, 2024 response letter, the PCRA court agreed with this Court's observation that the record lacked any indication that Houser properly

relinquished his right to counsel prior to the August 30, 2022 hearing, and thus, the PCRA court held an evidentiary hearing on January 4, 2024 to determine whether Houser desired court-appointed counsel or to proceed pro se. PCRA Court Letter, 1/11/2024. At that hearing, Houser agreed that the PCRA court did not colloquy him prior to the August 30, 2022 hearing. N.T., 1/4/24, at 4. Houser indicated that at the time of the August 30, 2022 hearing, he was under the impression that he had to proceed either *pro se* or retain private counsel. **Id.** at 6. Houser stated that because he could not afford private counsel, he proceeded *pro se*. **Id.** ("And at the time, I couldn't afford an attorney, so I decided to go *pro se*. So I was always under that impression, that I had to go *pro se* in order to proceed with this case."). Nonetheless, following a colloquy pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988), Houser indicated that he did not wish to have another evidentiary hearing before the PCRA court with representation and that wanted to proceed *pro se* for the instant appeal. **Id.** at 4-5, 7-8. Thus, the PCRA court found "[Houser] properly waived his right to counsel and that he should be permitted to continue his appeal pro se." PCRA Court Letter, 1/11/2024. The court also found that Houser "declined any further" evidentiary hearings with representation. **Id.** (citing N.T., 1/4/2024, at 7).

Despite the irregular procedural history of this case, particularly as it pertains to Houser's legal representation in the underlying matter, we are satisfied with the PCRA court's resolution of the issue relating to Houser's lack

of representation at the August 30, 2022 hearing and its handling of his decision to proceed pro se on appeal. The PCRA court offered Houser the opportunity to have another evidentiary hearing with representation and he declined, and then gave Houser the appropriate colloquy to confirm his desire to proceed pro se on appeal. *See id.* 4-5, 7-8. Moreover, Houser does not raise any challenge relating to his representation in his appellate brief. Accordingly, we turn our attention to the merits of Houser's appeal.

Houser presents the following issues for review:

1. Court-appointed counsel [] was ineffective where she failed to adequately investigate whether [Houser]'s inmate telephone recordings were subject to procedure when releasing or divulging to law enforcement, attorney's [sic] or the public.

2. Court-appointed counsel [] was ineffective in failing to adequately investigate the Commonwealth's lack of a probable cause or reasonable ground to search [Houser]'s recorded inmate telephone conversations, secured within the Westmoreland County Prison.

3. Court-appointed counsel [] was ineffective in failing to file timely pre-trial motions, where the Commonwealth at no time displayed, explained, or demonstrated the proximate cause in its actions in seeking to retrieve [Houser]'s inmate telephone conversations.

4. Court-appointed counsel [] was ineffective when she failed to object to Patrolman [Wagner]'s trial testimony and induce impeachment under prior inconsistent statement.

5. Court-appointed counsel [] was ineffective in failing to object to the trial court's incected [sic] instruction to the jury with respect to the elements of aggravated assault.

6. Court-appointed counsel [] was ineffective in failing to object to the trial court's abuse of discretion that violated due

- 6 -

process of jury deliberations where the trial court's non-standard jury instruction restricted its own discretion.

7. Court-appointed counsel [] was ineffective in failing to object to undue emphasis upon [Houser]'s inmate telephone conversations, where play of the audio evidence was not requested for re-play by the jury in its question to the trial judge during deliberations.

8. Former [A]ssistant [D]istrict [A]ttorney Peter Glenn Flanigan committed prosecutorial misconduct during closing arguments.

9. The PCRA [court] abused its discretion in exercising of discretionary power to an end or purpose not justified by, and dearly against, reason and evidence, where conclusion of merit was arbitrary against the evidence.

Houser's Brief at 3-4.

We begin by acknowledging our standard of review. "We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023). "[W]e defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility. *Id.* Our standard of review of a PCRA court's legal conclusions, however, is de novo. *Id.*

Each of the first seven issues Houser presents for review assert that trial counsel provided ineffective assistance.

It is well[]settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered

prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

*Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa. 2021) (quotation marks and citation omitted). Importantly, a PCRA petitioner must address each of these three prongs not only before the PCRA court but also on appeal, as the petitioner bears the burden of pleading that counsel provided ineffective assistance. *Id.* This Court, however, need not review the elements pertaining to claims of ineffective assistance of counsel in any particular order, as the law is clear that "[a] petitioner's failure to satisfy any prong of this test is fatal to the claim." *Id.*

Houser's first three claims of ineffective assistance of counsel relate to the recorded phone calls he made as an inmate at the Westmoreland County Prison that the Commonwealth introduced as evidence at trial. *See* Houser's Brief at 9-21. As they are interrelated, we address them together. At trial, the Commonwealth introduced into evidence two phone calls Houser made while he was incarcerated at the Westmoreland County Prison during which he detailed to another individual how, and the extent to which, he assaulted Richter. *See* N.T., 2/2-5/2015, at 212-15. Houser argues that trial counsel was ineffective for failing to challenge the introduction of the recordings of these telephone calls prior to or during trial. *See* Houser's Brief at 9-21. Specifically, Houser contends that trial counsel was ineffective for failing to investigate if the prison had an appropriate procedure in place for obtaining

inmate phone calls. *See id.* at 9-14. Houser further asserts that trial counsel was ineffective for failing to investigate whether the Commonwealth had probable cause to obtain the recordings of these calls and likewise, for failing to file a pretrial motion to suppress the recordings of the phone calls. *Id.* at 15-21. Houser contends that given the details relating to the severity of his assault upon Richter that he divulged during these phone calls, the jury likely only would have found him guilty of simple assault instead of aggravated assault had trial counsel been able to convince the trial court to exclude the recordings from evidence. *Id.* at 14.

Generally, section 5703 of the of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act") prohibits a person from intercepting "any wire, electronic or oral communication," except as provided elsewhere in the Act. 18 Pa.C.S. § 5703; *Commonwealth v. Byrd*, 235 A.3d 311, 314 (Pa. 2020). Section 5704 of the Wiretap Act enumerates exceptions to this general prohibition. *See id.* § 5704. Section 5704(14) sets forth an exception for recordings of prison inmate telephone communications and provides, in pertinent part:

> (14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge an oral communication, electronic communication or wire communication from or to an inmate in a facility under the following conditions:
>
> > (i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging an oral communication, electronic communication or wire communication from or to

- 9 -

an inmate in a county correctional facility as provided for by this paragraph:

(A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their oral communications, electronic communications or wire communications may be intercepted, recorded, monitored or divulged.

(B) Unless otherwise provided for in this paragraph, after intercepting or recording an oral communication, electronic communication or wire communication, only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee, or law enforcement officers shall have access to that recording.

(C) The contents of an intercepted and recorded oral communication, electronic communication or wire communication shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

18 Pa.C.S. § 5704(14)(i).

From what we can discern from Houser's brief, his primary complaint regarding the recordings at issue and section 5704(14)(i) is that he never received written notice that the prison was recording his telephone calls. *See* Houser's Brief at 13. In response, the Commonwealth points out that at the beginning of every phone call with a prisoner, the parties to the call are advised via a pre-taped recorded message that the call is being recorded, and thus, Houser had actual knowledge that the prison was recording his calls. *See* Commonwealth's Brief at 5.

- 10 -

In *Commonwealth v. Baumhammers*, 960 A.2d 59 (Pa. 2008), our Supreme Court rejected the exact argument that Houser raises in this appeal. In *Baumhammers*, the appellant argued that the Allegheny County Jail violated the Wiretap Act when it recorded phone calls between himself and his parents, during which he made incriminating remarks that the Commonwealth later used against him at trial, because he never received written notice that the prison was recording the calls. *Id.* at 77. In rejecting this argument, our Supreme Court relied on the prison's pre-recorded warning that played at the start of the phone call indicating that the call was being recorded, as it provided actual notice to the appellant.

> Simply stated, there is no basis to conclude that the privacy rights of Appellant or his parents were infringed when their March 2, 2001 telephone conversation was recorded. These individuals were actually aware that their telephone conversation was being or could be intercepted and recorded by prison authorities. Written notice to Appellant, assuming he never received any, would not have afforded him any greater protection of his right to privacy or that of his parents than the actual notice they possessed at the time of the conversation. Therefore, on this basis alone, Appellant's argument is wholly without merit.

*Id.* at 79.

In this case, at Houser's PCRA hearing, trial counsel testified that the Westmoreland County Prison advises the parties to a call with an inmate via a pre-taped recorded message that the call is being recorded and that she always advises her incarcerated clients that the prison records their telephone calls. N.T., 8/30/2022, at 7. Likewise, right before the Commonwealth played the recordings of the telephone calls at issue at Houser's trial, the

- 11 -

Commonwealth noted for the record that "there's an announcement at the beginning of all of these calls that they are being recorded and that they will be disclosed. That warning is given to anyone on both sides of the conversation." N.T., 2/2-5/2015, at 213.

Based on the foregoing, Houser's claims that trial counsel was ineffective for failing to investigate whether the prison had an appropriate procedure in place for recording inmate phone calls and for failing to challenge the introduction of his recorded prison telephone calls prior to and at trial lacks arguable merit. The prison, under section 5704(14)(i), was authorized to record the telephone calls, Houser possessed actual knowledge the prison was recording the calls, and thus, trial counsel could not have filed a suppression motion or objected on that basis. *See Baumhammers*, 960 A.2d at 77-79. Accordingly, Houser's first three issues fail.

For his fourth issue, Houser argues that trial counsel was ineffective for failing to impeach Patrolman Wagner's trial testimony. Houser's Brief at 21-23. Specifically, Houser argues that Patrolman Wagner's statements in the affidavit of probable cause contradict his trial testimony about what he observed on September 6, 2013, when he arrived at the scene and observed Houser assaulting Richter. *Id.*

In the affidavit of probable cause, Patrolman Wagner stated that when he arrived on the scene on the night of September 6, 2013, he "observed a [black male] on top of a [white female]. The female was screaming for help."

Affidavit of Probable Cause, 9/6/2013. According to Houser, the following portion of Patrolman Wagner's trial testimony contradicts the affidavit of probable cause:

> Q. And when you got to the back of the house, what did you see?
>
> A. Once I got towards the back of the house, I heard a female screaming.
>
> Q. Was she screaming words or just screaming noise?
>
> A. I think she was just screaming noise. She might have been saying help. I'm not sure.
>
> Q. And did you continue in the direction of the woman's screams?
>
> A. I did.
>
> Q. And what did you see when you got in view of the woman who was screaming?
>
> A. Well, the grass was, kind of, high, so I really couldn't see the woman completely, but I did see a male standing over top of her with his knee on her and he was punching her, coming down and punching her.

N.T., 2/2-5/2015, at 189-90.

We disagree that this testimony contradicts the affidavit. The only discrepancy that exists is that in the affidavit of probable cause, Patrolman Wagner stated that he heard a woman screaming for help while in his trial testimony he was not sure if she was screaming generally or screaming for help. **Compare** Affidavit of Probable Cause, 9/6/2013 **with** N.T., 2/2/2015 – 2/5/2015, at 189-90. This is, at best, a minor discrepancy that does nothing

- 13 -

to indicate that Patrolman Wagner lacked credibility. Although the remainder of Patrolman Wagner's testimony adds detail to the events that occurred on the night in question, it does not in any way contradict the affidavit of probable cause. Thus, upon review of the testimony at issue, we discern no basis upon which trial counsel should have attacked Patrolman Wagner's credibility. Moreover, Houser sets forth only a bald assertion that had trial counsel attacked Patrol Wagner's credibility, it would have changed the outcome of the trial. *See* Houser's Brief at 23. We therefore conclude that Houser's claim that trial counsel was ineffective for failing to impeach Patrolman Wagner's credibility fails both the arguable merit and prejudice prong of the test for ineffective assistance of counsel. ***See Reid***, 259 A.3d at 405. Accordingly, Houser's fourth issue does not entitle him to relief.

In his fifth, sixth, and seventh issues, Houser argues that trial counsel was ineffective for failing to object to the replaying of the telephone calls he made as an inmate of the Westmoreland County Prison during the jury's deliberations. Houser's Brief at 23-27. Houser asserts that the jury did not request to rehear the recordings of the telephone calls and that in replaying the recordings to the jury, the trial court improperly influenced the verdict.[2]

***Id.***

_____

[2] We note that in his statement of questions involved section of his appellate brief, Houser asserts in issue five that trial counsel was ineffective for failing to object to the trial court's jury instructions on the charge of aggravated

*(Footnote Continued Next Page)*

- 14 -

The record reflects that the jury asked to take the transcripts of the recorded telephone calls at issue into the jury room during deliberations. N.T., 2/2-5/2015, at 277-78. The trial court, however, did not admit into evidence the transcripts of the telephone calls. *See id.*; *see also* Commonwealth's Brief at 6. Thus, in an attempt to satisfy the jury's request, the trial court instead decided to replay the recordings of the telephone calls for the jury. N.T., 2/2-5/2015, at 278.

Houser, however, does not explain how the jury hearing him describe the manner in which he assaulted Richter, as opposed to reading it in the transcript, would have resulted in a different outcome at trial. *See* Houser's Brief at 23-27. Thus, Houser has failed to establish that he was prejudiced by the trial court's decision to replay the recordings of the telephone calls instead of providing the jury with the transcripts of the calls. *See Reid*, 259 A.3d at 405. Accordingly, Houser fifth, sixth, and seventh claims of ineffective assistance of counsel do not entitle him to relief.

For his eighth issue, Houser argues that he is entitled to a new trial because the Assistant District Attorney committed prosecutorial misconduct

_____

assault. *See* Houser's Brief at 3-4. Houser, however, did not include any discussion on this issue in the argument section of his appellate brief. *See id.* at 23-27. Thus, Houser has waived any claim of ineffective assistance of counsel relating to the trial court's jury instructions on the charge of aggravated assault. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to ... develop the issue in any [ ] meaningful fashion capable of review, that claim is waived").

during closing arguments when he stated that the evidence at trial suggests that Houser's actions caused Richter to have a "reasonable fear of death." Houser's Brief at 27-29; *see also* N.T., 2/2/2015 – 2/5/2015, at 254-55. For purposes of the PCRA, however, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." *Commonwealth v. Wholaver*, 177 A.3d 136, 174 (Pa. 2018) (quoting 42 Pa.C.S. § 9544(b)). Here, the prosecutor's alleged misconduct took place during trial and thus, Houser could have, but did not, raise the issue on direct appeal.[3] Consequently, Houser has waived the eighth issue that he raises on appeal.

Finally, Houser's ninth and final issue is merely a statement that the PCRA court abused its discretion in denying his PCRA petition. Because we conclude that the issues Houser raises on appeal either lack merit or are waived, the trial court did not err in dismissing his PCRA petition.

Order affirmed.

---

[3] We note that Houser has not raised any claim that his direct appeal counsel was ineffective for failing to raise a prosecutorial misconduct claim. *See Wholaver*, 177 A.3d at 147 (recognizing that an underlying issue to be raised on direct appeal is a "wholly distinct legal claim" from a claim of ineffective assistance of counsel).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>8/5/2024</u>